# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 84

APRIL TERM, A.D. 2026

July 24, 2026

GOLDIE D. BEEDY,

Appellant
(Defendant),

v.

S-25-0271

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

**Representing Appellant:**
Office of the State Public Defender: Patricia L. Bennett, Wyoming State Public Defender;* Kirk A. Morgan, Chief Appellate Counsel; Donna D. Domonkos, Contract Assistant Appellate Counsel.

**Representing Appellee:**
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Patrick D. Kent, Senior Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

* An order substituting Patricia L. Bennett for Brandon T. Booth was entered on April 15, 2026.

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    A jury convicted Goldie Beedy of exploiting Harold Anderson, a vulnerable adult. On appeal, Ms. Beedy asserts there was insufficient evidence to establish the alleged location of the crime in Converse County.  She also appeals the district court's order requiring restitution for clothing purchased for Mr. Anderson by his guardian.  We conclude the evidence was sufficient to establish the crime occurred in Converse County, and the district court did not abuse its discretion when it ordered restitution for the clothing. We affirm.

## ISSUES

[¶2]    We rephrase the issues as:

> 1.    Was the evidence sufficient to establish the crime occurred in Converse County?
>
> 2.    Did the district court abuse its discretion when it awarded restitution for clothing purchased for Mr. Anderson by his guardian?

## FACTS

[¶3]    On May 14, 2024, Mr. Anderson was taken from his home in Glenrock, Converse County, Wyoming, to the hospital in Casper, Natrona County, Wyoming, due to mental health concerns.  His doctors diagnosed him with psychosis and dementia and concluded he was unable to make decisions for himself.  On May 28, 2024, while he was still in the hospital in Casper, Mr. Anderson transferred title to his vehicle and mobile home to Ms. Beedy.  The bill of sale indicated the mobile home and the vehicle were "gifted" to Ms. Beedy in exchange for dollar amounts significantly less than their value.  Ms. Beedy took possession of the mobile home and the vehicle that day.  Also on May 28, Mr. Anderson called Glenrock law enforcement to report concerns his property was being stolen.  An officer went to Mr. Anderson's residence, a mobile home located in Glenrock, and found Ms. Beedy and another individual inside.  Ms. Beedy was in the process of cleaning the mobile home, removing items, and discussing changes she intended to make to the property.  Ms. Beedy alleged she was going to become Mr. Anderson's guardian and showed the officer incomplete and unfiled guardianship papers to that effect.

[¶4]    On July 16, 2024, in Natrona County, Ms. Beedy filed a completed petition seeking to be appointed as Mr. Anderson's guardian.  Mr. Anderson was later relocated from the hospital to Wyoming Behavioral Institute, and Wyoming Guardianship Corporation (WGC) was appointed as his guardian.

1

[¶5]    The State charged Ms. Beedy with intentionally or recklessly exploiting a vulnerable adult, in violation of Wyo. Stat. Ann. § 6-2-507(d).  The charges were filed in Converse County.  Ms. Beedy filed a motion to dismiss, arguing Natrona County is the proper venue for the case because Mr. Anderson was in the hospital in Natrona County when the alleged exploitation occurred.  The district court denied Ms. Beedy's motion and held a trial.

[¶6]    A jury found Ms. Beedy guilty, and the district court sentenced her to four to seven years of incarceration, suspended in favor of three years of supervised probation.  The parties agreed to restitution for the mobile home and vehicle.  The district court held a restitution hearing for items that included new clothing purchased for Mr. Anderson and compensation for the guardian's time.  The district court awarded $1,340.48 in restitution for the clothing, finding that the guardian was not able to access Mr. Anderson's clothing at the time of purchase because it was stored in the mobile home under the control of Ms. Beedy.  The district court declined to order restitution for work boots it deemed unnecessary and for guardian fees.  Ms. Beedy appeals.

## DISCUSSION

### I.    *Was the evidence sufficient to establish the crime occurred in Converse County?*

[¶7]    Ms. Beedy argues there was insufficient evidence to sustain her conviction in Converse County because Mr. Anderson was in Natrona County from May 15 through May 30, 2024, the dates she allegedly committed the offense.

[¶8]    We review a challenge to the sufficiency of the evidence as follows:

> [W]e assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence.  After examining the State's evidence, whether direct or circumstantial, we do not substitute our judgment for that of the jury, but instead, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.  Furthermore, we defer to the jury as the fact-finder, and assume the jury believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt.  Ultimately, our standard of review is not whether the evidence is sufficient for us, but whether, when viewed favorably to the state, it was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt.

2

*Hanson v. State*, 2025 WY 80, ¶ 7, 571 P.3d 1282, 1285 (Wyo. 2025) (quoting *Munoz v. State*, 2024 WY 103, ¶ 8, 556 P.3d 238, 240 (Wyo. 2024) (quoting *Hultberg v. State*, 2024 WY 59, ¶ 12, 549 P.3d 759, 761 (Wyo. 2024))).

[¶9]   Ms. Beedy was charged with exploitation of a vulnerable adult, as prohibited by Wyo. Stat. Ann. § 6-2-507(a) (LexisNexis 2025), which provides, "Except under circumstances constituting a violation of W.S. 6-2-502 [pertaining to aggravated assault and battery], a person is guilty of abuse, neglect, abandonment or exploitation of a vulnerable adult if the person intentionally or recklessly abuses, neglects, abandons, intimidates or exploits a vulnerable adult."

> "Exploitation" means the reckless or intentional act taken by any person, or any use of the power of attorney, conservatorship or guardianship of a vulnerable adult, to:
>
> (A)   Obtain control through deception, harassment, intimidation or undue influence over the vulnerable adult's money, assets or property with the intention of permanently or temporarily depriving the vulnerable adult of the ownership, use, benefit or possession of his money, assets or property;
>
> (B)   In the absence of legal authority:
>
>> (I)   Employ the services of a third party for the profit or advantage of the person or another person to the detriment of a vulnerable adult;
>>
>> (II)   Force, compel, coerce or entice a vulnerable adult to perform services for the profit or advantage of another against the will of the vulnerable adult.
>
> (C)   Intentionally misuse the principal's property and, in so doing, adversely affect the principal's ability to receive health care or pay bills for basic needs or obligations; or
>
> (D)   Abuse the fiduciary duty under a power of attorney, conservatorship or guardianship.

Wyo. Stat. Ann. § 35-20-102(a)(ix) (LexisNexis 2025); Wyo. Stat. Ann. § 6-2-507(e)(v) ("'Exploitation' means as defined in W.S. 35-20-102(a)(ix)").

[¶10]  Jury instruction number 17 set forth the elements of exploitation of a vulnerable adult:

> The elements of the crime of Exploitation of a Vulnerable Adult, as charged in this case, are:
>
> 1.  **On or between May 15th and May 30th, 2024,**
> 2.  **In Converse County, Wyoming,**
> 3.  The Defendant, Goldie Beedy,
> 4.  Intentionally
> 5.  Exploited
> 6.  A Vulnerable Adult.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

(Emphasis added.)   The State bore the burden of establishing the alleged exploitation occurred in Converse County "[o]n or between May 15th and May 30th, 2024."  The site of the commission of a crime may be established by circumstantial evidence.  *See State v. May*, 2015-Ohio-4275, ¶ 24, 49 N.E.3d 736, 746 (Ohio); *In re A.M.*, No. 1014 Sept. Term 2015, 2016 WL 3569938, at *5 (Md. Ct. Spec. App. July 1, 2016); *McDonald v. State*, 487 A.2d 306, 310 (Md. Ct. Spec. App. 1985).

[¶11]  Ms. Beedy contends there was no evidence introduced that the crime occurred in Converse County during the relevant time period.  She argues, "[t]he only evidence places any alleged criminal conduct during the charged time period in Natrona County."  She asserts Mr. Anderson was in the hospital in Natrona County from May 14, 2024, through the charged time period—May 15 through May 30.  She points out that she visited Mr. Anderson in Natrona County and had him sign his name to the titles while he was in the hospital.  Ms. Beedy contends the only act that could be construed as intentional conduct in Converse County—her taking control of the Suburban—was never established to have occurred during the time period charged in the information.  The investigating officer testified that Ms. Beedy obtained keys to the vehicle from the Glenrock Police Department (located in Converse County), where she had placed them for safekeeping.  There is no evidence in the record as to the date that occurred.

4

[¶12]   Giving the State every reasonable inference, as we are required to do under our standard of review, *supra* ¶ 8, we conclude that the State presented sufficient evidence at trial to establish the crime occurred in both Converse and Natrona Counties during the charged time frame of May 15 through May 30, 2024.  Regardless of where she had Mr. Anderson convey his property, Ms. Beedy's conduct in completing the exploitation and securing control over his assets occurred in Converse County during the charged period.  Both the mobile home and the vehicle were located in Converse County, where Ms. Beedy took possession of them.  The investigating police officer testified that on May 28, 2024, she encountered Ms. Beedy at the mobile home in Glenrock, Converse County, Wyoming, where Ms. Beedy was cleaning, and that Ms. Beedy indicated the mobile home was going to be hers.  It was there that Ms. Beedy showed the officer the unfiled guardianship documents.  Mr. Anderson's sister testified that when Mr. Anderson was in the hospital, Ms. Beedy told her that she had keys to the mobile home and she was going to clean it and "possibly start moving in."  Ms. Beedy obtained the keys to the vehicle from the Glenrock Police Department, albeit on an unestablished date.  The titles conveying the mobile home and the vehicle to Ms. Beedy were notarized on May 28, 2024, and Ms. Beedy filed the titles in Converse County.  Converse County issued new titles for both the mobile home and the vehicle on May 30, 2024.

[¶13]   This evidence was sufficient for a jury to conclude, as it did, that the exploitation occurred from May 15 through May 30, 2024, in Converse County.

[¶14]   The State contends that although Ms. Beedy frames her issue as a challenge to the sufficiency of the evidence, the core of her claim is that the case was brought in the wrong venue.  To the extent Ms. Beedy asserts that the district court erred in determining venue was proper in Converse County, we disagree.  Venue "is not an element of a crime[.]" *United States v. Calonge*, 74 F.4th 31, 34 (2d Cir. 2023).  Rather, venue is "the place of trial" fixed by the trial court "with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice."  W.R.Cr.P. 18.  Trial courts typically determine venue on motions prior to trial, as the district court did here.  *See, e.g.*, *Murray v. State*, 671 P.2d 320, 327 (Wyo. 1983) (motion for change of venue filed prior to jury selection).

[¶15]   We review a district court's ruling on venue for an abuse of discretion.  *Aron v Willey*, 2019 WY 122, ¶ 5, 453 P.3d 1031, 1033 (Wyo. 2019); *Nixon v. State*, 994 P.2d 324, 326 (Wyo. 1999).  We will not "interfere with a [district] court's decision concerning venue unless [the district court] acted in a manner exceeding the bounds of reason under the circumstances." *Nixon*, 994 P.2d at 327.

[¶16]   The district court determined venue was proper in Converse County because the "corpus of the alleged misdeeds, including a vehicle and a residence, are in Converse County, Wyoming."  The Wyoming Constitution provides that in all criminal prosecutions the accused "shall have the right" to a "trial by an impartial jury of the county or district in

which the offense is alleged to have been committed" and "[w]hen the location of the offense cannot be established with certainty, venue may be placed in the county or district where the corpus delecti [delicti] is found . . . ." Wyo. Const. art. 1, § 10. Wyoming Statute Annotated § 1-7-102(a) similarly requires a criminal defendant to "be tried in the county in which the indictment or offense charged is found, except as otherwise provided by law." Wyo. Stat. Ann. § 1-7-102(a). "When the location of a criminal offense cannot be established with certainty, venue may be placed in the county or district where the corpus delicti is found[.]" Wyo. Stat. Ann. § 1-7-102(b). "*Corpus delicti*" is "the body of the crime." *Morris v. State*, 2023 WY 4, ¶ 27, 523 P.3d 293, 298 (Wyo. 2023) (citation omitted); *Merchant v. State*, 4 P.3d 184, 192 (Wyo. 2000) (holding "venue in criminal cases can be invoked in either the location where the offense is committed or where the *corpus delicti* is found. If the location of the crime cannot be established with certainty, it is constitutionally permissible to place venue in the location where the essential facts comprising the crime are discovered." (citation omitted)).

[¶17]   In *McCone v. State*, the defendant, who had made threatening calls to a victim in Albany County, Wyoming, argued the district court in Albany County was an improper venue because the evidence did not establish the calls had originated in Albany County. *McCone v. State*, 866 P.2d 740, 746–47 (Wyo. 1993). We held venue could be established in both the location where the calls originated and in Albany County, where the calls were received. *Id.* at 747. We explained:

> McCone, regardless of where he dialed the phone, was transmitted into Albany County by the telephone, where his words were heard and had effect. *See also State v. Levand*, 37 Wyo. 372, 380–81, 262 P. 24 (1927) (holding that venue for a criminal libel prosecution is proper where the alleged libel was printed or circulated). McCone's actions, theoretically, are no different than the famous law school hypothetical where one person shoots from one jurisdiction and hits another person who is located in a different jurisdiction. In that scenario it has been held that the state where the criminal act takes effect, *i.e.*, the bullet entering the victim, has jurisdiction and venue. *Simpson v. State*, 17 S.E. 984 (Ga. 1893).

*McCone* at 747.

[¶18]   As we explained above, evidence introduced at trial showed Ms. Beedy's crime took place in both Converse and Natrona Counties. *See supra* ¶¶ 11–13. Like *McCone*, regardless of where Mr. Anderson conveyed his property to Ms. Beedy, the transfers took effect in Converse County. The mobile home and the vehicle were located in Converse County. Ms. Beedy took possession of them and transferred their titles to herself in Converse County. Both Mr. Anderson and Ms. Beedy had primary residences in Converse

6

County. Ms. Beedy was in Converse County when law enforcement encountered her at Mr. Anderson's mobile home.

[¶19] Wyoming Statute Annotated § 1-7-102 and article 1, section 10 of the Wyoming Constitution grant venue in Natrona County, where Mr. Anderson conveyed his property to Ms. Beedy *or* in Converse County, because the property, the corpus of the crime, was located there. *McCone* at 747.

[¶20] The district court did not abuse its discretion when it determined venue was proper in Converse County.

## II. *Did the district court abuse its discretion when it awarded restitution for clothing purchased for Mr. Anderson by his guardian?*

[¶21] Ms. Beedy argues the district court abused its discretion when it ordered restitution for Mr. Anderson's clothing purchased for Mr. Anderson by his guardian.

[¶22] A "district court's factual findings on restitution are presumptively correct and will not be set aside unless they are clearly erroneous." *Duke v. State*, 2025 WY 72, ¶ 11, 571 P.3d 340, 343 (Wyo. 2025) (citing *Kuebel v. State*, 2019 WY 75, ¶ 47, 446 P.3d 179, 190 (Wyo. 2019)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Kuebel*, ¶ 48, 446 P.3d at 190). "[W]e give due regard for the district court's opportunity to assess the credibility of the witnesses [and] our review does not entail re-weighing disputed evidence[. We] may examine all of the properly admissible evidence in the record." *Duke*, ¶ 11, 571 P.3d at 343 (quoting *Kuebel*, ¶ 47, 446 P.3d at 190); *see also Holliday v. State*, 2024 WY 139, ¶ 11, 561 P.3d 335, 338 (Wyo. 2024). "When a party challenges a restitution order for sufficiency of the evidence, we review the district court's decision for an abuse of discretion." *Duke*, ¶ 12, 571 P.3d at 343 (quoting *Holliday*, ¶ 5, 561 P.3d at 337).

[¶23] Wyo. Stat. Ann. § 7-9-103(b) provides:

> In every case in which a claim for restitution is submitted, **the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity**, and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction or in the order placing the defendant on probation under W.S. 7-13-301.

Wyo. Stat. Ann. § 7-9-103(b) (LexisNexis 2025) (emphasis added).

[¶24]  Pecuniary damage is defined as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death.  It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium."  Wyo. Stat. Ann. § 7-9-101(a)(iii).  Criminal activity is "any crime for which there is a plea of guilty, nolo contendere or verdict of guilty upon which a judgment of conviction may be rendered . . . ."  Wyo. Stat. Ann. § 7-9-101(a)(i).

[¶25]  To justify restitution, the defendant's criminal activity must have been a proximate cause of the victim's damage or loss. *Freeman v. State*, 2019 WY 86, ¶ 14, 448 P.3d 194, 197 (Wyo. 2019).  To be a proximate cause, conduct must be "'a substantial factor in bringing about the injuries.' . . . [I]f 'the conduct created only a condition or occasion for the harm to occur, it would be regarded as a remote, not a proximate, cause and would not be a substantial factor in bringing about the harm.'"  *Id.* (quoting *Alcaraz v. State*, 2002 WY 57, ¶ 9, 44 P.3d 68, 72 (Wyo. 2002)).  The State must prove the amount of restitution by a preponderance of the evidence. *Duke*, ¶ 14, 571 P.3d at 343.  "[E]vidence is sufficient to support the sentencing court's restitution decision if it affords a reasonable basis for estimating a victim's loss."  *Id.* (quoting *Holliday*, ¶ 6, 561 P.3d at 337).

[¶26]  At the restitution hearing, Brendi Jensen, the Life Management Service Director for WGC, was the only witness.  Ms. Jensen testified that at the time Mr. Anderson became WGC's ward, his only possession was his wallet.  Ms. Jensen did not have access to his personal belongings because "it was [WGC's] understanding that his [mobile] home with all his personal belongings was no longer in his name."  In order to get Mr. Anderson clothing and necessities, Ms. Jensen "coordinate[d] with his treatment team . . . and then order[ed] everything" on Amazon.  The items she purchased totaled $1,560.43.  On cross-examination, Ms. Jensen testified she was not aware of anyone going to the mobile home to retrieve Mr. Anderson's clothing and that no one had contacted his sister for help getting his clothes.  The district court found the guardian could not access the mobile home because it was in Ms. Beedy's possession.  The district court concluded that, with the exception of work boots purchased for $219.95, the items purchased for Mr. Anderson were "reasonable" and "appropriate."  It ordered restitution in the amount of $1,340.48 for the clothing purchased on Mr. Anderson's behalf.

[¶27]  Ms. Beedy contends that because the guardian could have retrieved Mr. Anderson's clothes from the mobile home but did not attempt to do so, there was no causal connection between the crime and the need to purchase replacement clothing.  She asserts the district court improperly awarded restitution for clothing.  The State counters that the district court properly ordered restitution for clothing because there is a direct relationship between the criminal conduct and the guardian's need to purchase clothes for Mr. Anderson—when Ms. Beedy took possession of the mobile home, she also took possession of items inside it, including Mr. Anderson's clothing.

8

[¶28] In *Layton v. State*, 2007 WY 1, ¶ 6, 150 P.3d 173, 175 (Wyo. 2007), the defendant was convicted of felony larceny for stealing a Jeep. The district court ordered him to pay restitution for the stolen vehicle and for the owner's personal items in the vehicle. *Id.* ¶ 14, 150 P.3d at 178. On appeal, the defendant argued the district court improperly ordered restitution for the personal items because he had not been found guilty of stealing those items. *Id.* We rejected that argument, holding that when the defendant "stole the Jeep, he stole the items that were contained therein. Thus . . . there [was] a direct relationship between the claimed loss and the criminal conduct." *Id.* ¶ 19, 150 P.3d at 179.

[¶29] The *Layton* analysis applies here. When Ms. Beedy took possession of Mr. Anderson's mobile home and vehicle, she took possession of the personal items inside them. Ms. Beedy's conduct was "a substantial factor in bringing about" the need to purchase clothing for Mr. Anderson. *See Freeman*, ¶ 14, 448 P.3d at 197. The district court did not abuse its discretion when it ordered restitution for clothing.

## *CONCLUSION*

[¶30] Sufficient evidence was introduced at trial for a jury to conclude the crime occurred in Converse County. The district court did not abuse its discretion when it awarded restitution for clothes purchased by Mr. Anderson's guardian. We affirm.

9